UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS SILVA, | Civil No.   09-CV-2193-W (BGS) |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS** |
| v. | [Doc. No. 34.] |
| NASARIA P. BARRERAS, et al., | |
| Defendants. | |

**I.**

**PROCEDURAL BACKGROUND**

Plaintiff, Jesus Silva ("Plaintiff"), a state prisoner proceeding *pro se*, filed this action under 42 U.S.C. § 1983.  Plaintiff filed a First Amended Complaint ("FAC") on March 8, 2010.  (Doc. No. 6.) Plaintiff alleges that Defendants deprived him of his Eighth Amendment right to be free from cruel and unusual punishment, were deliberately indifferent to his medical needs, and were negligent under state

tort law. On September 6, 2010, Defendants Alexi, Barreras, Hatch, Khatri, Nicholas, and Tracy (collectively "Defendants") filed a motion to dismiss the FAC on the grounds that Silva failed to exhaust his administrative remedies. (Doc. No. 32.) In support of this allegation, Defendants submitted declarations from T. Kirby, a health care appeals coordinator at Centinela State Prison in Imperial, California (Doc. No. 32-3); M. Rocha, a correctional counselor and appeals coordinator at the North Kern State Prison (Doc. No. 32-4); and L. Zamora, the chief of the Office of Third Level Appeals-Healthcare, in California Prison Health Care Services (Doc. No. 32-5). Defendants also moved to dismiss on the grounds that Silva failed to state a viable claim for deliberate indifference to his medical needs, under the Eighth Amendment. Finally, Defendants moved to dismiss Silva's state-law negligence claims because he failed to plead compliance with the California Tort Claims Act. (Doc. No. 32.)

## II.

### PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff is a California prisoner who was confined at the California State Prison in Solano when he filed the FAC in March 2010. (FAC at 1.) Plaintiff complains primarily about events alleged to have occurred at Centinela State Prison ("Centinela") in Imperial, California during 2007. (*Id.*) In his FAC, Plaintiff alleges the following supporting facts:

Plaintiff received a gunshot wound to the head in 2004 which resulted in a significant bifrontal cerebral lesion. (FAC at 5.) One of the side effects of this injury is that Plaintiff has severe heat intolerance. (*Id.*) Plaintiff alleges that Defendant Alexi was aware of his heat intolerance and should not have transferred him to Centinela, "one of the hottest prisons." (*Id.* at 3.) Following Plaintiff's arrival to Centinela on December 28, 2005, he experienced a series of heat related ailments including fainting spells, dizziness, nausea, and vomiting requiring immediate medical attention. (*Id.* at 5.)

While at Centinela, Plaintiff received two "comprehensive accommodation chronos" which stated that he must be indoors when outdoor temperatures exceed 90 degrees. (*Id.* at 7.) The chronos were issued by Dr. Collinsworth on July 19, 2006, and Dr. Barreras on March 29, 2007. (*Id.*)

On April 30, 2007, Correctional Officer Hatch and an unnamed floor officer took Plaintiff to the yard when it was "incredibly hot outside." (*Id.* at 6.) Approximately 30 minutes later, Plaintiff began experiencing severe head pain, dizziness, and nausea. (*Id.*) Plaintiff called out to the unnamed tower officer telling him that he had "heat alert chronos" and he could not be outside in the heat. (*Id.*) The officer stated, "[You're] not on a list so thats your problem, you have to wait until yard recall." (*Id.*) After about 45 minutes, Plaintiff started to lose consciousness and other inmates in the yard began yelling and rallying to the tower officer to let Plaintiff inside and to call for medical help. (*Id.*) The tower officer called the medical department and asked if Plaintiff had any heat chronos. (*Id.*) Upon confirming that Plaintiff had heat chronos, Correctional Officer Hatch arrived and escorted Plaintiff to his cell. (*Id.*) Plaintiff was locked in his cell where he fainted and cracked open his head. (*Id.*) Plaintiff awoke as he was being taken to the Central Treatment Center. (*Id.* at 7.)

On June 16, 2007, Plaintiff was sent to the yard by an unnamed floor officer. (*Id.*) Plaintiff was locked outside in over 90 degree temperatures and subsequently suffered a heat stroke. (*Id.*) He had a syncopal episode, possible seizures, disorientation, severe memory loss, and an axillary temperate of 101.6 degrees. (*Id.*) Plaintiff contends, that as a result, he has decreased strength, feeling, and mobility on the right side of his body. (*Id.* at 8.)

///

///

## III.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT

Defendants seek to dismiss the FAC in its entirety because Silva failed to exhaust his administrative remedies concerning the allegations in the FAC.

**A. Exhaustion Under the Prison Litigation Reform Act ("PLRA")**

*1. Legal Standard*

Under the PLRA, prisoners are required to exhaust prison administrative procedures before filing a 42 U.S.C. § 1983 claim challenging prison conditions. 42 U.S.C. § 1997e(a) (1996). The exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 524-32 (2002).

An inmate must comply with prison grievance procedures to "properly exhaust" his administrative remedies under the PLRA. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). "The level of detail necessary in a [prison] grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. In California, inmates have the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." 15 Cal.Code Regs. tit. 15, § 3084.1(a)[1]. California also provides prisoners the right to file appeals alleging misconduct by correctional officers and officials. *Id*. § 3084.1(e). At the time of the alleged incidents and when Plaintiff began his appeal process, in order to exhaust available administrative remedies, a prisoner was required to proceed through several levels

---

[1] The California Department of Corrections and Rehabilitation inmate formal administrative appeals process underwent a major revision in 2011, including the discontinuation of the informal appeal process. *See* 2011 CA REG TEXT 248824 (NS).

of appeal: (1) informal resolution[2]; (2) formal written appeal in a 602 inmate appeal form[3]; (3) second level appeal to the institution head or designee[4]; and (4) third level appeal to the Director of the California Department of Correction and Rehabilitation. *Id*. § 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009). The administrative process is exhausted only after the inmate complies with all relevant prison grievance procedures, and receives a decision from the Director's level. *Woodford v. Ngo*, 548 U.S. 91, 95-96 (9th Cir. 1999). Furthermore, the administrative process must be completely exhausted before the inmate files the Complaint. *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006).

The exhaustion requirement imposed by 42 U.S.C. § 1997e(a) does not impose a pleading requirement, but rather is an affirmative defense which defendants have the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust, a court may look beyond a pleading and decide disputed issues of fact." *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010); *see Ritza v. Int'l Longshormen's & Warehouse Union,* 837 F.2d 365, 368 (9th Cir. 1988) (permitting the consideration of affidavits submitted by the parties on a motion to dismiss nonjudicial remedies). If the court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim

---

[2] Under California Code of Regulations Title 15, § 3084.5(a)(3), the informal level of appeal was bypassed for appeals of (1) classification committee actions; (2) serious disciplinary infractions; (3) classification staff representative actions; (4) departmental regulations, policies, or operational procedures; (5) exceptional circumstances defined in section 3084.7; (6) any action which the appeals coordinator determines cannot be resolved informally; (7) alleged misconduct by a departmental peace officer; or (8) the denial of disabled inmate or parolee requests for reasonable modification or accommodation filed on CDC Form 1824 (1/95), Reasonable Modification Or Accommodation Request, pursuant to section 3085.

[3] The appeals coordinator could elect to bypass an appeal at the First Formal level and submit it directly to the Second Formal Level for (1) a policy or procedure implemented by the institution head; (2) a policy, procedure or regulation implemented by the department; (3) an issue which cannot be resolved at the division head's level; e.g., appeal of a regular transfer; (4) serious disciplinary infractions. Cal. Code Regs tit. 15, §3084.5(b).

[4] Only matters involving involuntary transfers to the California Medical Facility or Atascadero State Hospital bypassed the Second Formal Level and were submitted directly to the Third Formal Level. Cal. Code Regs. tit. 15, §§ 3084.5 (c); 3084.7(d)(4)(B).

without prejudice. *Id*.

*2. Application to Plaintiff's Complaint*

In the FAC, Plaintiff checked the box indicating that he exhausted his administrative remedies. (FAC at 13.) The information presented by Plaintiff and Defendants, however, indicates that this is not the case.

In the FAC, Plaintiff attaches two administrative appeals submitted while he was at California State Prison, Solano. (Doc. No. 6-2 at 2, 6-4 at 2.) Plaintiff submitted his first appeal on October 9, 2008 regarding renewing his heat chrono. (Doc. No. 6-2 at 2.) Plaintiff submitted his second appeal on June 1, 2009. (Doc No. 6-4). The June 1, 2009 appeal asked for Social Security Disability Insurance, memory cognitive testing and therapy, and job therapy. (Doc. No. 6-4 at 3.) No references to the facts alleged in the FAC about Plaintiff's exposure to heat at Centinela or Defendants' failure to transfer Plaintiff out of Centinela exists in either appeal.

Furthermore, when Plaintiff submitted his appeals, prisoners had to submit an appeal within 15 days of the occurrence of the event or decision being appealed. 15 Cal.Code Regs. tit. 15, § 3084.6(c))[5]. In the FAC, Plaintiff alleges that the last violation occurred on June 16, 2007. Yet, the appeals attached to the FAC were filed on October 9, 2008 and June 1, 2009. (Doc. No. 6 at 7.) Therefore, even if the these appeals are construed in such a way that they relate to the facts alleged in the FAC, they were not filed within the prescribed time limit. Accordingly, the appeals would be untimely, still rendering Plaintiff's claims unexhausted.

Defendants bear the burden of proving that Plaintiff has not exhausted his administrative remedies; thus, the Court looks to the evidence presented by Defendants to decide the issue. Defendants

---

[5]California Code of Regulations Title 15, §3084.8(b) now provides the time limits for submitting an appeal. Inmates now must submit the appeal within 30 calendar days of the event or decision being appealed.

provided information regarding Plaintiff's inmate appeals through declarations from T. Kirby, a health care appeals coordinator at Centinela State Prison in Imperial, California (Doc. No. 32-3);  M. Rocha, a correctional counselor and appeals coordinator at the North Kern State Prison (Doc. No. 32-4); and L. Zamora, the chief of the Office of Third Level Appeals-Healthcare.  (Doc. No. 32-5).  Furthermore, the Court also reviewed inmate appeals  Plaintiff submitted prior to August 2007, since the FAC alleges that the last violation occurred on June 16, 2007,

 and at this time inmates were required to submit their appeals within 15 calendar days of the occurrence of the event or decision being appealed.  15 Cal.Code Regs. tit. 15, § 3084.6(c)).

The Office of Third Level Appeals-Healthcare logs all inmate appeals into a computer database known as the Healthcare Appeals Tracking System.  (Doc. No. 32-5 at 2.)  According to L. Zamora's declaration, a search of the Healthcare Appeals Tracking System records reveals that prior to 2007, Plaintiff never received a director's level decision, as required to effectively exhaust administrative remedies.  (Doc. No. 32-5.)  Declarations from T. Kirby and M. Rocha also reveal that prior to 2008, Plaintiff did not submit any inmate appeals for review at the third and final level of departmental administrative review.  (Doc. No. 32-3, 32-4.)  Finally, in the instance that either of Plaintiff's appeals remain pending and have not made it to the final level of review, Plaintiff also fails to meet the PLRA exhaustion requirement since all appeals must be completed prior to commencing the action.  *Vaden*, 449 F.3d at 1051.  Thus, Defendants have carried their burden to prove that Plaintiff did not exhaust the administrative remedies available to him.  Accordingly, the Court finds that Plaintiff did not exhaust his administrative remedies, and recommends that Defendants' motion to dismiss be **GRANTED without prejudice**.

**B. Compliance With California Government Claims Act**

Plaintiff alleges that Defendants were negligent in performing their job duties by transferring

him to Centinela and failing to follow the appropriate heat alert procedures.  (FAC at 8.)  Plaintiff further alleges that as a result of their negligence he suffered injuries.  (*Id*.)

### *1. Legal Standard*

When defendants are public employees, the plaintiff must first submit a claim to the public entity that employs the defendants before filing a lawsuit seeking money damages for violations of California law.  Cal.Gov't Code § 945.4, 950.2.  The statue requires that, before filing suit, an individual seeking to recover in tort against a public entity for claims relating to injury to a person must present the claim to the entity "not later than six months after the accrual of the cause of action."  Cal.Gov't Code § 950.2.  Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity.  *Harman v. Mono Gen. Hosp.*, 182 Cal.Rptr. 570, 573 (Cal. Ct. App. 1982).

Thus, a plaintiff must affirmatively allege facts "demonstrating or excusing compliance with the claim presentation requirement."  *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1243 (Cal. Ct. App. 2004).  The requirement that a plaintiff asserting claims subject to the California Torts Claims Act must affirmatively allege compliance with the claims filing requirement applies in federal court as well.  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 627 (9th Cir. 1988).  If a plaintiff does not allege compliance with the claim presentation requirement, his claims under the California Tort Claims Act will be dismissed for failure to state a cause of action.  *Bodde*, 32 Cal.4th 32 Cal.4th at 1243.

### *2. Application to Plaintiff's Complaint*

The record shows that Plaintiff has not alleged compliance with the California Torts Claims Act concerning his negligence claims.  (Doc. No. 6.)  In his FAC, Plaintiff lists "negligence under state tort law" as a cause of action against Defendants, but fails to provide evidence of any claim submitted to the public entity that employs Defendants.  (FAC at 5.)  Additionally, because the FAC fails to allege facts
///

demonstrating that Plaintiff was excused from complying with the timely claims presentation requirement, the Court recommends that the state torts claims be **DISMISSED without prejudice.**

**C. Defendants' Motion to Dismiss For Failure To State A Claim**

Defendants discuss in length why Plaintiff's allegations are insufficient to state a viable claim under the Eighth Amendment against any of the Defendants. However, as addressed above, the Court finds that Plaintiff has not exhausted his administrative remedies and recommends that the FAC be dismissed for that reason. Thus, the Court recommends that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be **DENIED as moot.**

## IV.

### CONCLUSION

Having reviewed the matter, the undersigned Magistrate Judge recommends that Defendant's Motion to Dismiss be **GRANTED** and the Complaint be dismissed.

In addition, the Court recommends that Plaintiff be **DENIED leave to amend** because (1) amending the complaint would be futile because it is too late for him to exhaust his administrative remedies; and (2) since no federal cause of action remains, the Court should decline jurisdiction over Plaintiff's pendent state claims. 28 U.S.C. § 1376(c)).

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

IT IS ORDERED that no later than seventeen days after receiving a copy this Report & Recommendation, any party to this action may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Report and Recommendation."

///

///

///

IT IS FURTHER ORDERED that any reply to the objection shall be filed with the Court and served on all parties within 10 days of being served with the objections.

DATED: February 17, 2012

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court